The **ASOCIACION COLOMBIANA de EXPORTADORES de FLORES,** Plaintiff,

**Floramerica, S.A., Cultivos de Caribe, S.A., and Jardines de Colombia, S.A.,** Plaintiffs–Appellants,

v.

The **UNITED STATES,** Defendant–Appellee,

and

**Floral Trade Council of Davis, California,** Defendant–Appellee.

No. 89–1742.

United States Court of Appeals, Federal Circuit.

April 11, 1990.

---

James M. Lyons, Heron, Burchette, Ruckert & Rothwell, Washington, D.C., argued for plaintiffs-appellants. With him on the brief were Thomas A. Rothwell, Jr. and Melanie Morris.

Jeanne E. Davidson, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellee, U.S. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief were Wendell L. Willkie, II, Gen. Counsel, Stephen J. Powell, Chief Counsel for Import Admin. and Anne White, Atty.–Advisor, Office of the Chief Counsel for Import Admin., Dept. of Commerce, of counsel. Jimmie V. Reyna, Stewart & Stewart, Washington, D.C., argued for defendant-appellee, Floral Trade Council of Davis, Cal. With him on the brief was Terence P. Stewart.

Before MARKEY, Chief Judge,
BENNETT, Senior Circuit Judge, and
PLAGER, Circuit Judge.

BENNETT, Senior Circuit Judge.

This appeal is from the final judgment of the United States Court of International Trade denying appellants' motion for summary judgment on the agency record and sustaining the final determination of the International Trade Administration (ITA). *Asociacion Colombiana de Exportadores de Flores v. United States*, 704 F.Supp. 1114 (Ct.Int'l Trade 1989). We affirm.

## BACKGROUND

This case arises out of the antidumping investigation commenced by the ITA in response to a petition by the appellee Floral Trade Council of Davis, California. The products covered by the investigation were fresh cut flowers produced by certain Colombian flower growers, including the appellants, Floramerica, S.A., Cultivos de Caribe, S.A., and Jardines de Colombia, S.A. (collectively "Floramerica" or "appellants"). Following the investigation and a hearing in which the appellants participated, the ITA issued its final affirmative determination of sales at less than fair value. *Certain Fresh Cut Flowers from Colombia*, 52 Fed.Reg. 6842 (Mar. 5, 1987), *amended*, 52 Fed.Reg. 8492 (Mar. 18, 1987).

The appellants commenced an action in the Court of International Trade contesting the less than fair value determination of the ITA. The appellants contended that the ITA had not deducted certain indirect selling expenses of a related company, Crown, when it calculated the foreign mar-

ket value of the flowers. The appellants contended that the identical amount had been deducted from the U.S. price, and the resulting differential between the U.S. price and the foreign market value caused the ITA to find that sales had been made in the United States at less than fair value.

The Court of International Trade stated that it appeared clear that, had the ITA known at the time of its determination all of the facts that were so clearly described by Floramerica before the Court of International Trade, the ITA would have granted a larger indirect selling expense offset than it did. According to the court, the ITA erred in not deducting the indirect selling expenses of Crown from the foreign market value. Nevertheless, the court held that the deciding factor in placing responsibility for the error was Floramerica's last minute submission of information to the ITA, which did not clearly indicate whether the Crown expenses were included in the foreign sales figures. The Court of International Trade observed that there was "no room for lack of clarity" by Floramerica, the only party in a position to explain its own data. The Court of International Trade found that the ITA did not abuse its discretion in refusing to recalculate the sales margins when the error made by the ITA was attributable to Floramerica's late submission of ambiguous data. Floramerica has now appealed.

### OPINION

A. *The Statutory and Regulatory Background*

The antidumping laws, 19 U.S.C. §§ 1673–1677k (1988), are directed to foreign products that are sold in the United States at less than fair value. *See generally Smith–Corona Group v. United States,* 713 F.2d 1568 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984). To determine whether sales are at less than fair value, the ITA compares the price of the goods in the United States with their foreign market value. The foreign market value may be based on sales in the home market of the party under investigation, sales in third coun-

tries, or on a constructed value of the imported product.

The United States price is determined by either the purchase price or the exporter's sales price (ESP). 19 U.S.C. § 1677a(a). The ESP is the price at which the goods are purchased by the first unrelated buyer following importation. If the ESP is used, the statute requires a reduction in the U.S. price by the amount of indirect selling expenses incurred by or on account of the exporter in the United States. 19 U.S.C. § 1677a(e)(2). Such indirect selling expenses may include salespersons' salaries, warehousing, and personnel assistance.

The statute does not provide for a similar reduction in the foreign market value, so the statutory reduction in ESP will result in an apparent increase in the dumping margin. To overcome this apparent distortion, the Commerce Department, by regulation, has provided for an adjustment to the foreign market value when the U.S. price is reduced by indirect selling expenses. The regulation in effect at the time of the ITA's final determination provided:

> In making comparisons using exporter's sales price, reasonable allowance will be made for all actual selling expenses incurred in the home market up to the amount of the selling expenses incurred in the United States market.

19 C.F.R. § 353.15(c) (1989) (superseded text). This allowance is known as the "ESP offset." The regulations also provided that "[t]he person who alleges entitlement to any adjustment pursuant to §§ 353.14 through 353.19 must establish entitlement thereto to the satisfaction of the Secretary." 19 C.F.R. § 353.13 (1989) (superseded text).

B. *The Appellants' Distribution System*

Floramerica, S.A., Cultivos de Caribe, S.A., and Jardines de Colombia, S.A. are three related Colombian flower producers. Sunburst Farms Miami is a related company that imports and distributes the flowers in the United States and Canada. Sun Petals sells to grocery stores. Sunburst Farms Holland is a related company that imports and distributes in Europe. Crown,

a Panamanian corporation, is an intermediary between the Colombian producers and the Sunburst distributors. Crown is related to the other companies.

## C. *The Evidence Before the ITA*

Soon after the investigation was initiated in June 1986, the ITA issued a detailed questionnaire seeking information relating to Floramerica's costs, prices, and selling expenses. Floramerica responded, and the ITA sent deficiency letters requesting additional information and indicating that it required the data to be in a different form. Floramerica filed responses to the deficiency letters. On January 22, 1987, Floramerica filed a prehearing brief with the ITA in which it requested a deduction for indirect selling expenses. Floramerica filed a supplemental response on February 5, 1987. The ITA's final determination issued shortly thereafter, on March 5, 1987.

The information contained in Floramerica's February 5 submission is critical to this case. The submission consisted of charts setting forth various information concerning Floramerica's flower sales and a narrative describing the charts. The charts showed the number of units sold and the per stem cost and price information. One column was labeled "Indirect Selling Expenses." The charts contained information for both U.S. sales and third country sales.

In the narrative explanation of the charts, Floramerica stated:

*Indirect Selling Expenses:* In exporter's sales price situations, the statute requires that "expenses generally incurred by or for the account of the exporter in the United States" be deducted from U.S. price. . . . Accordingly, the selling expense adjustment has been limited to the costs incurred by Sunburst Farms and Sun Petals in making sales in the United States. These costs are reflected in revised attachment 17 submitted on December 31, 1986. A comparable figure has been calculated with respect to indirect selling expenses incurred by the Floramerica Group, including Sunburst Holland, in selling to Germany. Indirect selling expenses incurred by Sunburst Farms in selling to Canada are the same as the costs incurred in connection with U.S. sales.

When the ITA received this submission, it determined that the charts did not include the indirect selling expenses incurred by Crown with respect to the sales made in the United States. Therefore, pursuant to the antidumping statute, it deducted that amount from the U.S. price. The ITA did not deduct the Crown expenses from the third country price. According to the Court of International Trade, the ITA apparently interpreted the reference to the "indirect selling expenses incurred by the Floramerica Group" as including the expenses incurred by Crown.

Floramerica argues on appeal that it requested the indirect selling expenses offset, and the information it submitted in response to the questionnaires was sufficient for the ITA to determine the amount of the offset. Therefore, according to the appellants, no substantial evidence supports the ITA's calculation of the foreign market value and its determination of less than fair value sales. The appellants argue that the February 5 submission clearly showed that the Crown expenses were excluded from both the U.S. and third country information. According to Floramerica, the ITA's erroneous interpretation of the February 5 submission was due to its failure to consider the other evidence submitted by Floramerica, from which the amount of the ESP offset could be derived.

The government and the Floral Trade Council argue that the appellants had submitted inadequate information initially and had failed to cure the deficiencies. They argue that the February 5 submission was incomplete and ambiguous in that the narrative did not make it clear that Crown expenses were not included in the third country sales figures. They also argue that nothing on the sales charts indicated that only part of the indirect selling expenses was included or that the Crown expenses were excluded.

We hold that the ITA's determination is supported by substantial evidence, namely

Floramerica's February 5 submission which described the ESP offset it was claiming. The Court of International Trade did not err in concluding that the ITA had not abused its discretion in not recalculating the sales margins.

■ The February 5 submission makes it clear that the Crown expenses were not included in the U.S. selling expense adjustment. The narrative stated that the U.S. expense adjustment was "limited to the costs incurred by Sunburst Farms and Sun Petals...." Therefore, the ITA properly recalculated the U.S. indirect selling expenses to include Crown, as required by statute.

■ With respect to the third country sales, however, the February 5 submission is not clear. The narrative stated that "[a] comparable figure has been calculated with respect to indirect selling expenses incurred by the Floramerica Group, including Sunburst Holland...." The ITA could reasonably interpret the reference to "the Floramerica Group" as including Crown and therefore could interpret the February 5 submission as including the Crown expenses for third country sales. The ITA could reasonably have assumed that the charts submitted with the narrative showed the total third country indirect selling expenses that the appellants were claiming. With this evidence of the claimed offset, the ITA need not have recalculated the foreign indirect selling expense figures by referring to the previous submissions of the appellants.

That the Floramerica group can now show on appeal how a different ESP offset could have been calculated does not mean that the ITA's determination was not supported by substantial evidence when it was made. Under the regulations, the appellants had the burden of establishing their entitlement to the ESP offset. The ITA could take the appellants' February 5 submission for what it said and interpret it as setting forth the total ESP offset that Floramerica was claiming. The appellants should not be allowed to reconcile the ambiguities by rearguing their position when they had the opportunity to present their case unambiguously during the investigation.

## CONCLUSION

We conclude that substantial evidence supports the ITA's determination of the ESP offset and the sales margins. The Court of International Trade did not err in holding that the ITA did not abuse its discretion in refusing to recalculate the margins. We therefore affirm.

AFFIRMED.